IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

TONY HOLLIS,                          *
                                      *
        Plaintiff,                    *     CIVIL ACTION NO. 14-00268-B
                                      *
vs.                                   *
                                      *
CAROLYN W. COLVIN,                    *
Commissioner of Social                *
Security,                             *
                                      *
        Defendant.                    *

**ORDER**

Plaintiff Tony Hollis (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. On May 14, 2015, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 20). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.   **Procedural History**

Plaintiff protectively filed an application for a period of

disability and disability insurance benefits on February 22, 2011. (Tr. 157). Plaintiff alleged that he has been disabled since December 15, 2009, due to "[two] ruptured discs in lower back/fusion in lower back."[1] (Id. at 157, 161). Plaintiff did not allege any intellectual limitations in his disability application, nor did he claim any intellectual limitations at his hearing. (Id. at 52-61, 161, 164).

Plaintiff's applications were denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Mary E. Helmer (hereinafter "ALJ") on December 18, 2012. (Id. at 45, 78). Plaintiff attended the hearing with his counsel and provided testimony related to his physical impairments. (Id.). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id.). Following the hearing on December 18, 2012, Plaintiff filed a motion requesting that the ALJ order a consultative mental examination for the purpose of performing IQ testing. (Id. at 236). On January 14, 2013, the ALJ issued an unfavorable

---

[1] In his Disability Report dated March 7, 2011, which Plaintiff completed himself, he was asked to list all physical and mental conditions that limit his ability to work. Plaintiff responded, "[two] ruptured discs in lower back/fusion in lower back." (Tr. 161). Plaintiff further responded that he has never sought treatment for a mental condition. (Id. at 164). Also, when asked at his hearing why he could no longer work, he stated that his former employer asked him to lift things that he could not lift. (Id. at 52).

2

decision finding that Plaintiff is not disabled.  In addition, the ALJ denied Plaintiff's request for a consultative mental examination on the grounds that there was no evidence that Plaintiff was mentally retarded, and to the contrary, that the evidence showed that Plaintiff's adaptive functioning was well above that of a person with mild mental retardation.  (Id. at 37-38, 40).  On March 14, 2013, Plaintiff requested that the Appeals Council consider a report obtained from Dr. Donald Blanton, Ph.D., related to a mental status evaluation and IQ testing conducted by Dr. Blanton on February 12, 2013.  (Id. at 18-19).  The Appeals Council denied Plaintiff's request for review, finding that the report did not provide a basis for changing the ALJ's decision.  (Id. at 1-2).  Therefore, the ALJ's decision dated January 14, 2013, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  The parties waived oral argument on May 14, 2015 (Doc. 21), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues on Appeal

> **1. Whether the ALJ erred in failing to fully and fairly develop the record by denying Plaintiff's motion for a consultative mental examination to determine Plaintiff's intellectual**

**functioning?**

**2. Whether the Appeals Council erred in failing to admit into the record the report of Plaintiff's examining psychologist, Dr. Donald Blanton, Ph.D.?**

## III. <u>Factual Background</u>

Plaintiff was born on February 20, 1965, and was forty-seven years of age at the time of his administrative hearing on December 18, 2012.  (Tr. 157).  Plaintiff testified that he dropped out of school after the eleventh grade.  (<u>Id.</u> at 48, 231).  Plaintiff's school records reflect that he was enrolled in regular classes while in school and that he repeated the first and eleventh grades.  (<u>Id.</u> at 48-49, 231).  Plaintiff did not pass the high school graduation examination and did not receive a high school diploma.  (<u>Id.</u> at 48, 235).

Plaintiff testified that he cannot read a newspaper, and he needed help filling out job applications.  (<u>Id.</u> at 55, 56-57).  He has a commercial driver's license, which he obtained after passing the oral commercial driving test.  Plaintiff failed the written commercial driving test four times.  (<u>Id.</u> at 49-50).

According to Plaintiff's Disability Report, he last worked from 2007 to 2009 as a delivery truck driver for a welding company.  Prior to that, he worked as a delivery truck driver for a lumber company in 2006 and as a delivery truck driver for a gas company for approximately fourteen years from 1990 to

2004.[2]  (Id. at 45, 49-50, 162, 167).  Plaintiff also worked at a truck rental company in 2007, washing and cleaning trucks.  (Id. at 162).

Plaintiff testified that he quit working in December 2009 after having a motor vehicle accident.  Plaintiff stated that he could no longer perform the lifting requirements of his job after the accident.  (Id. at 51-52).  According to Plaintiff, as a result of the accident, he underwent fusion surgery on his back, physical therapy, and epidural injections for pain.  (Id. at 52-54).  His current medications include amitriptyline (for sleep), Fluoxetine (for nerves), and Hydrocodone and Tramadol (for pain).  (Id. at 54, 58).

Plaintiff testified that he lives with his wife and three children, that he sleeps approximately twelve to fifteen hours a day, and that he cannot lift two pounds.[3]  (Id. at 59-60).  In his Function Report, Plaintiff stated that he can take care of his personal needs such as feeding, shaving, and showering but sometimes needs help using the toilet and putting on his clothes.  (Id. at 189, 193).  He walks every day and can walk

---

[2] At the hearing, Plaintiff testified that he drove a truck for the gas company for approximately twelve years and that his responsibilities as a delivery truck driver for the gas company included writing reports on how much gas he delivered each day. (Tr. 49-50).

[3] Upon further questioning, Plaintiff stated that he can lift a gallon of milk, although it is painful.  (Tr. 61).

seventy-five to one hundred yards.  (Id. at 56, 195).  He does not drive anymore.  (Id. at 195).

Plaintiff stated that he can handle a checkbook and make change; he does not need reminders to take care of his personal needs or to take medicine; he can pay attention "pretty good;" he is "fair" at following written and spoken instructions; he finishes what he starts "sometimes;" he gets along with authority figures "very well;" he has never been laid off from work because of problems getting along with other people, but he does not handle stress well.  (Id. at 194-98).

IV.  **Analysis**

    A.  **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[4]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v.

---

[4] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

   **B.   Discussion**

   An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for

7

determining if a claimant has proven his disability.[5]  20 C.F.R. §§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since December 15, 2009, the alleged onset date, and that he has the severe impairments of status post L5-S1 posterior decompression and fusion for preoperative lumbar radiculopathy, degenerative disc with annular tear at L5-S1, lumbar spondylosis, and lumbar spinal stenosis.   (Tr. 30).   The ALJ further found that

---

[5] The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  Id.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 33).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a range of light work, except that "he cannot operate foot controls with the lower extremities; he cannot climb ladders, ropes, or scaffolds; cannot crouch; cannot be exposed to excessive vibration, unprotected heights and hazardous machinery. Any work performed by claimant must not require complex written instruction." (Id. at 34). The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not entirely credible for the reasons explained in the decision. (Id. at 37).

Given Plaintiff's RFC, the ALJ found that Plaintiff is not capable of performing his past work as a gas delivery truck driver or as a delivery driver, both of which are classified as semiskilled and medium. (Id. at 39). However, utilizing the testimony of a VE, the ALJ concluded that considering Plaintiff's residual functional capacity for a range of light work, as well as his age, education and work experience, there

9

are also other jobs existing in the national economy that Plaintiff is able to perform, such as "tagger," "inspector," and "garment sorter," all of which are classified as unskilled and light. (Id. at 39-40). Thus, the ALJ concluded that Plaintiff is not disabled.[6] (Id. at 40).

As stated above, despite the fact that Plaintiff did not raise the issue of mental retardation prior to his hearing, his attorney did request a consultative mental examination after the hearing. (Id. at 236). In her decision, the ALJ denied the request and made the following relevant findings with respect to Plaintiff's alleged mental impairment:

> Following the hearing, Claimant's representative requested that I order a consultative examination to include intelligence and achievement testing, alleging that he might meet Listing 12.05C due to mental retardation and his physical impairment (Exhibit 14E). As grounds, the representative noted that Claimant repeated first and eleventh grades and dropped out of school before graduating. Claimant also testified that he could not read a newspaper. He took the drivers license test and the commercial driver's license tests several times before he passed them orally.
>
> I did not order testing because there is no evidence that Claimant is mentally retarded

---

[6] Plaintiff does not take issue with the ALJ's findings with respect to his physical impairments. (Doc. 13 at 1). His only claims in this case involve the ALJ's findings with respect to his alleged intellectual impairment, i.e., mental retardation. (Id.). Therefore, the Court's discussion is limited to Plaintiff's alleged mental impairment only.

> or that he has ever been diagnosed with
> mental retardation. Claimant testified that
> he was not ever placed in special education
> classes. While Claimant may have had
> difficulty passing driver's license tests,
> he did obtain a commercial driver's license
> test and worked in that field. As
> vocational expert testimony discussed below
> establishes, Claimant has past relevant work
> as a Delivery Driver and a Gas Delivery
> Truck Driver. Both jobs are semi-skilled.
> He has been able to maintain a checking
> account. Claimant's adaptive functioning
> is well above that of a person with mild
> mental retardation.

(Id. at 37-38).

As discussed above, following the ALJ's determination on January 14, 2013, that Plaintiff is not disabled, Plaintiff submitted additional evidence to the Appeals Council consisting of a mental evaluation report from Dr. Donald Blanton, Ph.D., dated February 12, 2013, reporting that Plaintiff obtained a valid, Full Scale IQ Score of 67 on the WAIS-IV, placing him in the mild range of mental retardation, and that he demonstrates deficits in adaptive functioning manifested prior to age twenty-two. (Id. at 21-23). The Appeals Council denied Plaintiff's request for review on April 18, 2014, finding that the report was obtained after the date of the ALJ's decision and, thus, did not provide a basis for changing the ALJ's decision. (Id. at 1-2).

The Court now considers the foregoing in light of the record in this case and the issue on appeal.

1.   **Issues**

 **A. Whether the ALJ erred in failing to fully and fairly develop the record by denying Plaintiff's motion for a consultative mental examination to determine Plaintiff's intellectual functioning?**

In this case, Plaintiff claims that the ALJ erred in failing to fully and fairly develop the record regarding his cognitive functioning. (Doc. 13 at 1). Specifically, Plaintiff argues that the ALJ ignored his school records and his testimony that he made poor grades throughout school, that he repeated the first and eleventh grades, that he never passed the high school graduation examination, and that he dropped out of high school after the eleventh grade and that, based on that evidence, the ALJ should have granted his request for a consultative mental examination and IQ testing. (Id. at 1-2). The Commissioner counters that the ALJ did not err in failing to order a consultative mental examination because no evidence suggested that Plaintiff was mentally retarded; Plaintiff did not allege in the application process or at his hearing that he was mentally retarded; and Plaintiff's work history included many years of employment in semi-skilled positions. (Doc. 18 at 1-2). Having carefully reviewed the record in this case, the Court agrees that Plaintiff's claim is without merit.

It is well established that a hearing before an ALJ in social security cases is inquisitorial and not adversarial. A claimant bears the burden of proving disability and of producing evidence in support of her claim, while the ALJ has "a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam); see also Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007). This duty to develop the record exists whether or not the claimant is represented by counsel. Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995).

42 U.S.C. 421(h) provides that "in any case where there is evidence which indicates the existence of a mental impairment," a determination that a claimant is not disabled "shall be made only if the Commissioner . . . has made every reasonable effort to ensure that a qualified psychiatrist or psychologist" has offered an opinion or reviewed the record. Id. Likewise, in McCall v. Bowen, 846 F.2d 1317, 1320 (11th Cir. 1988), the Eleventh Circuit stated that where there is evidence indicating the existence of a mental impairment, the Commissioner may determine that the claimant is not under a disability only if the Commissioner has made "every reasonable effort to obtain the opinion of a qualified psychiatrist or psychologist." Id. (quoting 42 U.S.C. § 421(h) (internal quotation marks omitted). Later, in Sneed v. Barnhart, 214 Fed. Appx. 883, 886 (11th Cir.

2006) (unpublished), a panel of the Eleventh Circuit stated that, "McCall interprets § 421(h) [to] require[] an ALJ to order a psychological consultation where there is evidence of a mental impairment." Id.

Notwithstanding the foregoing, an ALJ is not required to order a consultative examination where the record contains sufficient evidence to permit the ALJ's RFC determination. Ingram, 496 F.3d at 1269 ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."); see also Good v. Astrue, 240 Fed. Appx. 399, 404 (11th Cir. 2007) (unpublished) ("the ALJ need not order an additional consultative examination where the record was sufficient for a decision."). Furthermore, "an administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." Street v. Barnhart, 133 Fed. Appx. 621, 627 (11th Cir. 2005).

In this case, the Commissioner correctly points out that Plaintiff did not allege in his application process that he is impaired as a result of mental retardation, nor did he or his counsel assert at his administrative hearing that Plaintiff is impaired as a result of mental retardation. To the contrary,

Plaintiff stated only that he is disabled as a result of "[two] ruptured discs in lower back/fusion in lower back" and that he has never sought treatment for a mental condition. (Id. at 161, 164). Moreover, as noted above, when asked at his hearing why he could no longer work, he stated only that his former employer asked him to lift things that he could not lift. (Id. at 52, 161).

Following his hearing, Plaintiff's counsel filed a motion for a consultative mental examination and IQ testing, which the ALJ denied on the grounds that there was no diagnosis of mental retardation in the record, nor was there any other evidence indicating the existence of a mental impairment. (Id. at 37-38, 236). The ALJ found, and the record confirms, that Plaintiff has an extensive work history in semi-skilled positions; he obtained a commercial driver's license; he was enrolled in regular classes in school; he is able to use a check book and count money; he can read and write; he filed reports and used technical knowledge or skills in his previous jobs at Welder Supply Company and Campbell's Truck Rental; he shops; he takes care of most of his personal care needs; he does not need reminders to take care of his personal needs or to take medicine; he reported no mental limitations to the Agency, only issues related to his back problems; he reported that his ability to pay attention is "pretty good;" he is "fair" at

following written and spoken instructions; and he gets along with authority figures "very well."   (Id. at 37-38, 49-50, 55, 160, 182-83, 189, 193-98).

In addition, none of Plaintiff's treating physicians ever noted a mental impairment of any kind.   To the contrary, Plaintiff's orthopedic surgeon, Dr. Michael Davis, M.D., noted that, during a discussion with Plaintiff concerning non-surgical options for his back pain, Plaintiff "walked out and said he wanted another opinion."   Dr. Davis' notes reflect that Plaintiff was an active participant in the discussion, that he understood the options available to him, and that he was in control of his treatment plan.   (Id. at 286).   Likewise, notes from consultative physical examiner, Dr. Oluyinka Adediji, M.D. (internal medicine) dated March 20, 2012, indicate that Plaintiff was alert and oriented, that his interpersonal behavior was socially appropriate, that there was no evidence of psychomotor disturbance, and that his mood, affect, thought processes, and thought content were normal.   (Id. at 366). Similarly, Plaintiff's treatment records from Jackson Hospital dated January 27, 2011, reflect that Plaintiff was negative for any psychiatric problems.   (Id. at 376).

The foregoing evidence supports the ALJ's denial of Plaintiff's request for a consultative mental examination, and it supports the ALJ's determination that Plaintiff has the RFC

to perform a range of light work, with the noted restrictions. (Id. at 34, 38).   The Court rejects Plaintiff's argument that the mere facts that he made poor grades in school, that he failed the first and eleventh grades, that he failed the high school graduation examination, and that he had difficulty passing his driving test indicates the existence of a mental impairment, particularly given the substantial evidence in this case that Plaintiff's adaptive functioning is well above that of a person with mild mental retardation.

Where, as here, the record contains sufficient evidence to permit the ALJ's RFC determination,[7] the ALJ is not required to order a consultative mental examination.   See Ingram, 496 F.3d at 1269.   Accordingly, Plaintiff's claim that the ALJ erred in failing to fully develop the evidence related to his alleged mental retardation impairment is without merit.

### B. Whether the Appeals Council erred in failing to properly evaluate and admit into the record the report of Plaintiff's examining psychologist, Dr. Donald Blanton, Ph.D.?

Next, Plaintiff argues that the Appeals Council erred in failing to properly consider and admit into the record Dr. Blanton's mental evaluation report dated February 12, 2013. (Doc. 13 at 4).   In the report, Dr. Blanton diagnosed Plaintiff

---

[7] As noted above, Plaintiff does not challenge the ALJ's RFC with respect to any of his physical impairments.

with mild mental retardation based on a Full Scale IQ score of 67 and found that Plaintiff had deficits in adaptive functioning manifested prior to age 22. (Tr. 22-23). Plaintiff argues that the Appeals Council erred when it found that the report did not affect the decision about whether Plaintiff was disabled during the relevant period in question because it was obtained after the date of the ALJ's decision. (Doc. 13 at 4). The Commissioner counters that any error by the Appeals Council in failing to properly consider Dr. Blanton's report is harmless because nothing in the report would have changed the outcome in this case. (Doc. 18 at 10). Having carefully reviewed the record, the Court finds that Dr. Blanton's report does not provide a basis for changing the ALJ's decision in this case. Therefore, any error by the Appeals Council in its evaluation of Dr. Blanton's report is harmless.

"With a few exceptions, the claimant is allowed to present new evidence at each stage of [the] administrative process." Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007). "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" Id. (quoting 20 C.F.R. § 404.970(b)). "[W]hen a claimant properly presents new evidence to the Appeals Council,

a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Id. at 1262. Evidence is material if it is "relevant and probative so that there is a reasonable possibility that it would change the administrative outcome." Caulder v. Bowen, 791 F. 2d 872, 877 (11th Cir. 1986).

In this case, Plaintiff properly submitted the report from Dr. Blanton to the Appeals Council as it was generated after the ALJ's decision dated January 14, 2013. In the report, Dr. Blanton stated that he conducted IQ testing on Plaintiff and that Plaintiff received a Full Scale IQ score of 67, indicating mild mental retardation. (Id. at 22). Dr. Blanton opined that Plaintiff "has marked limitations that seriously interfere with his ability to perform work-related activities on a day-to-day basis in a regular work setting in the following areas: understand[ing] detailed or complex instructions, carry[ing] out detailed or complex instructions, remember[ing] detailed or complex instructions, respond[ing] [to] customary work pressures, us[ing] judgment in detailed or complex work-related decisions, maintain[ing] attention and concentration and pace[][for] at least two hours, [and] maintain[ing] activities of daily living." (Id. at 23). Dr. Blanton further opined that, "[i]t is my opinion that [Plaintiff's] mental retardation has been a lifelong condition . . ." and that Plaintiff

"demonstrates deficits in adaptive functioning manifested prior to age 22 due to his mental retardation in the following areas: communication, work, use of community resources, [and] functional academic skills." (Id.).

At the outset, the Court notes that Plaintiff's statement that the Appeals Council failed to make Dr. Blanton's report part of the record is incorrect. (See Tr. 21). The report is part of the record in this case.

Also, contrary to Plaintiff's argument, the Appeals Council did consider the report. It simply determined that the report, which was obtained after the ALJ's decision, was not related to the period in question and, thus, was not chronologically relevant. (Id. at 2). Having reviewed the report in detail, the Court disagrees with the Appeals Council that the new evidence is not probative of the period in question. While the report was generated one month after the ALJ's decision, the IQ testing and the opinions expressed in the report are relevant to the Plaintiff's intellectual abilities one month earlier. Thus, the Appeals Council erred in rejecting the report on that basis. However, errors which do not prejudice the Plaintiff and which would not change the disability determination are harmless. See generally Battle v. Astrue, 243 Fed. Appx. 514, 522 (11th Cir. 2007) (unpublished); Wright v. Barnhart, 153 Fed. Appx. 678, 684 (11th Cir. 2005).

In this case, in order for Plaintiff to meet Listing 12.05C (mental retardation), he must present evidence of "[a] valid verbal, performance or full scale IQ of 60-70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05(C). In addition, he must satisfy the "diagnostic description" of mental retardation in Listing 12.05 (the listing category for mental retardation/intellectual disability),[8] which provides that mental retardation "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.05.

Assuming a valid IQ score and an additional qualifying mental or physical impairment, Plaintiff still cannot meet

---

[8] On August 1, 2013, the Social Security Administration amended Listing 12.05 by replacing the words "mental retardation" with "intellectual disability." See Hickel v. Commissioner of Soc. Sec., 539 Fed. Appx. 980, 982 n.2 (11th Cir. 2013) (citing 78 Fed. Reg. 46,499, 46,501, to be codified at 20 C.F.R. pt. 404, subpt. P, app. 1)). "This change was made because the term 'mental retardation' has negative connotations, and has become offensive to many people. Id. (citations and internal quotation marks omitted). "The Social Security Administration stated that the change does not affect the actual medical definition of the disorder or available programs or services." Id. (citations and internal quotation marks omitted). As in Hickel, this opinion uses the term "mental retardation" and "intellectual disability" interchangeably.

Listing 12.05C where, as here, his IQ score is inconsistent with the substantial record evidence of his work history, daily activities, and behavior.[9]   See Popp v. Heckler, 779 F.2d 1497,

---

[9]   In addressing the "adaptive functioning" aspect of Listing 12.05C, the Eleventh Circuit has sustained the rejection of claims under this Listing where the claimant's IQ score was significantly inconsistent with his/her adaptive functioning. For instance, in Perkins v. Commissioner, Soc. Sec. Admin., 553 Fed. Appx. 870 (11th Cir. 2014), the Eleventh Circuit upheld the ALJ's finding that Listing 12.05C was not met where the plaintiff performed skilled jobs, including as a skilled cook, managed other workers, and made contradictory claims regarding his education and employment history.   Also, in Hickel v. Commissioner, 539 Fed. Appx. 980, 984 (11th Cir. 2013), the Eleventh Circuit held that the ALJ did not err where he acknowledged that the claimant had a valid IQ score between 60 and 70, applied the presumption established by Hodges v. Barnhart, 276 F. 3d 1265, 1268-69 (11th Cir. 2001), and found that the presumption was rebutted by other evidence that showed that the claimant did not have "deficits in adaptive functioning."   In reaching that decision, the court noted that, although the claimant had been enrolled in special education classes, she worked part-time in a nursery, was a high school graduate, prepared simple meals, dressed herself, drove herself to work, attended church regularly, and socialized with friends. Id. at 984-985.   See also, Popp v. Heckler, 779 F.2d 1497, 1499-1500 (11th Cir. 1986)(affirming finding that Listing 12.05C was not met where the plaintiff had worked skilled jobs, obtained a college degree, and had exaggerated his deficits when examined); White v. Colvin, 2015 U.S. Dist. LEXIS 28277, 2015 WL 1013117, *4 (S.D. Ala. Mar. 9, 2015) (The ALJ properly found that the plaintiff did not have significant limitations in adaptive functions where the record reflected that, although the plaintiff had been in special education classes, he lived alone, maintained his financial affairs, and consistently worked at several different jobs); Robinson v. Colvin, 2015 U.S. Dist. LEXIS 43338, 2015 WL 1520431, *11 (S.D. Ala. Apr. 2, 2015) (where the plaintiff lived independently without a highly supportive living arrangement, cared for her personal needs, and had a significant work history, the ALJ properly found that her IQ score was inconsistent with the record evidence regarding her daily activities); Johnson v. Colvin, 2014 U.S. Dist. LEXIS 13497, 2014 WL 413492, *4  (S.D. Ala. Feb. 3, 2014)(although the

1499-1500 (llth Cir. 1986).   Indeed, a valid IQ score is not conclusive of mental retardation where the IQ score is inconsistent with other record evidence regarding the claimant's daily living activities and behavior.   See Perkins v. Commissioner, Soc. Sec. Admin., 553 Fed. Appx. 870, 873 (11th Cir. 2014).

Moreover, in this case, Dr. Blanton's opinion that Plaintiff has deficits in adaptive functioning is based on a one-time examination[10] and is inconsistent with the substantial record evidence in this case, as well as his own examination findings that Plaintiff's "thoughts and conversations were logical;" his "[a]ssociations were intact; his "affect was very flat but appropriate;" "[n]o confusion was noted;" he "was alert

---

ALJ never stated that the claimant failed to meet Listing 12.05C, the ALJ's finding that the claimant had high adaptive skills, in that he had the capacity to take care of his own needs, perform activities of daily living, and had successfully performed four different jobs since leaving high school, was sufficient to support his decision that the claimant was not mentally retarded); Lyons v. Astrue, 2009 U.S. Dist. LEXIS 128950 (M.D. Fla. May 24, 2009), adopted by 2009 U.S. Dist. LEXIS 48535, 2009 WL 1657388 (June 10, 2009) (The ALJ's finding that the claimant did not meet Listing 12.05C was supported by substantial evidence that demonstrated that the claimant had a high school diploma, was not in special education classes, completed his own social security forms, and had earnings from 1983 – 1990 between $13,696 and $18,408 per year).

[10] As a general rule in the Eleventh Circuit, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record.   See Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160-61 (11th Cir. 2004); McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).

and oriented to time[,] place[,] person[,] and situation;" and "[h]is judgment was fair for work and financial type decisions." (Id. at 21-22).

Having determined that the new evidence presented to the Appeals Council, *i.e.*, Dr. Blanton's February 12, 2013, mental evaluation report, does not render the ALJ's denial of benefits erroneous, any error by the Appeals Council in its evaluation of the report is harmless and does not warrant reversal. Accordingly, Plaintiff's claim must fail.

**V.   Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits be **AFFIRMED.**

**DONE** this **20th** day of **July, 2015.**

/s/ SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE
